1  DENNIS B. COOK, ESQ. (SBN 093432)
   COOK BROWN, LLP
2  555 CAPITOL MALL, SUITE 425
   SACRAMENTO, CALIFORNIA 95814
3  TELEPHONE NO.:  916-442-3100
   FACSIMILE NO.:  916-442-4227
4
   Attorneys for Defendant CHRIS RHODES
5

6

7
                    UNITED STATES DISTRICT COURT
8
                  EASTERN DISTRICT OF CALIFORNIA
9

10  INTERLOC SOLUTIONS, INC.,                Case No.  2:07-CV-01534-LEW-GGH

11               Plaintiff,                  **DEFENDANT CHRIS RHODES'**
                                             **MEMORANDUM OF POINTS AND**
12        v.                                 **AUTHORITIES IN SUPPORT OF**
                                             **OPPOSITION TO MOTION FOR**
13  TECHNOLOGY ASSOCIATES                    **PRELIMINARY INJUNCTION**
    INTERNATIONAL CORPORATION, WALT
14  OLESKI, CHARLES JOHNSON, CHRIS           Date:       August 17, 2007
    RHODES, MICHAEL NUTT and DOES 1          Time:       10:00 a.m.
15  THROUGH 10, inclusive,                   Ctrm:       9, 13th Floor
                                             Judge:      Honorable Ronald S.W. Lew
16               Defendants.

17

18

19

20

21

22

23

24

25

26

27

28

Memorandum of Points and Authorities in Support of Opposition to
Motion for Preliminary Injunction (2:07-CV-01534-LEW-GGH)
M:\LTJ\Rhodes\pld\Memo of P's & A's in Support of Opposition.doc

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ............................................................................................ii

I.      INTRODUCTION ................................................................................................1

II.     STATEMENT OF FACTS ...................................................................................1

        A.      Relevant Facts Before Charles Johnson's Termination. ...........................1

        B.      Relevant Facts After Charles Johnson's Termination. ..............................2

III.    ARGUMENT ......................................................................................................3

IV.     CONCLUSION ...................................................................................................5

1

# TABLE OF AUTHORITIES

2

## FEDERAL CASES

3

*Campbell v. Trustees of Leland Stanford Jr. University*
    817 F.2d 499 ....................................................................................2

4

*Imax Corp. v. Cinema Technologies, Inc.*
    152 F.3d 1161 ..................................................................................4

5

6

## STATE CASES

7

*KGB, Inc. v. Giannoulos*
    (1980) 104 Cal.App.3d 844 .............................................................3

8

*Kelton v. Stravinski*
    (2006) 138 Cal.App.4th 941 ...........................................................3

9

*Loral Corp. v. Moyes*
    (1985) 174 Cal.App.3d 268 .............................................................5

10

11

*Metropolitan Traffic Control, Inc. v. Shadow Traffic Network*
    (1994) 22 Cal.App.4th 853 .............................................................5

12

*Moss, Adams & Co. v. Shilling*
    (1986) 179 Cal.App.3d 124 ........................................................1, 5

13

14

*Muggill v. Reuben H. Donnelley Corp.*
    (1965) 62 Cal.2d 239 ......................................................................3

15

*Reeves v. Hanlon*
    (2004) 33 Cal.4th 1140 ..................................................................5

16

17

*Thompson v. Impaxx, Inc.*
    (2003) 113 Cal.App.4th 1425 .........................................................4

18

19

## FEDERAL STATUTES

20

18 U.S.C. §§ 1030 et seq..........................................................................1

21

## STATE STATUTES

22

California Business & Professions Code § 16600 ................................1, 3

23

California Civil Code §§ 3426, et seq...................................................1, 4

24

25

26

27

28

**Memorandum of Points and Authorities in Support of Opposition to
Motion for Preliminary Injunction (2:07-CV-01534-LEW-GGH)**

M:\LTJ\Rhodes\pld\Memo of P's & A's in Support of Opposition.doc   ii

## I.      INTRODUCTION

California Business & Professions Code Section 16600 provides that:

> Except as provided in this Chapter, every contract by which anyone is restrained from engaging in a lawful professions, trade, or business of any kind is to that extent void.

Case law construing Section 16600 establishes that employees have the right to engage in gainful employment and compete with their former employees so long as they do not misappropriate trade secrets or engage in unfair competition. *Moss, Adams & Co. v. Shilling* (1986) 179 Cal.App.3d 124, 129. Plaintiff's Complaint and declarations in support of its Motion for a Temporary Restraining Order describe a litany of "trade secrets," but provide no admissible evidence demonstrating that Defendant Chris Rhodes misappropriated any information from Plaintiff that meets the definition of trade secrets under the Uniform Trades Secrets Act. California Civil Code Sections 3426 et seq.

As described in Chris Rhodes' declaration filed herewith, Charles Johnson, his immediate supervisor and friend, was fired by Plaintiff without notice or warning. Only after this provocative act, did Rhodes consider leaving his employment to join Defendant Johnson in a new employment. There is no evidence and indeed, Plaintiff has offered none, that Rhodes used trade secret information to unlawfully compete with Plaintiff thereafter.

Plaintiff claims of misuse of its computer system under the Computer Fraud and Abuse Act (18 U.S.C. Section 1030 et seq.) and breaches of duties of loyalty, confidence, fiduciary responsibility, etc. are all based upon the faulty premise that Rhodes misappropriated trades secrets and engaged in unfair competition, however, the speculation and hearsay describe in Plaintiff's Complaint and declarations do not substantiate any of these claims.

## II.     STATEMENT OF FACTS

### A.      Relevant Facts Before Charles Johnson's Termination.

In Paragraph 8 of its Complaint, Plaintiff alleges that Rhodes joined Interloc in June 2005, but fails to state that Rhodes brought with him a substantial number of clients who were loyal to him and not Interloc. The vast majority of the clients with whom Rhodes worked were developed by him before he joined Interloc. (Declaration of Chris Rhodes in Support of Opposition to Motion for

**Memorandum of Points and Authorities in Support of Opposition to Motion for Preliminary Injunction (2:07-CV-01534-LEW-GGH)**

M:\LTJ\Rhodes\pld\Memo of P's & A's in Support of Opposition.doc      1

1 | Preliminary Injunction, hereinafter "Rhodes Declaration," ¶ 17.)

2 |      Plaintiff states that Rhodes set up a meeting between Charles Johnson and Walt Oleski in

3 | June 2007 in Paragraph 12, attempting to imply that Rhodes was thinking about leaving Interloc,

4 | Inc. (Interloc) before Charles Johnson was fired, but this assertion is blatantly untrue and Plaintiff

5 | provided no admissible evidence to support this contention. (Rhodes Declaration, ¶ 11.)

6 |      Plaintiff asserts in Paragraph 16, that Rhodes secretly downloaded date from Interloc's

7 | computer system shortly after Johnson was fired, but fails to mention that this download to his

8 | laptop was authorized and approved by Interloc's computer administrator and was done to serve

9 | Interloc clients the following week. (Rhodes Declaration, ¶¶ 8, 9.)

10 |      Chris Rhodes spoke to Interloc's President Mike Watson on July 13, the day Watson fired

11 | Johnson and confirmed his present intent to stay with Interloc. Thus, by 5:00 p.m. July 13, 2007

12 | Rhodes had done nothing to engage in unfair competition or misappropriate trade secrets. (Rhodes

13 | Declaration, ¶ 10.)

14 |     **B.**    **Relevant Facts After Charles Johnson's Termination.**

15 |      Plaintiff provides hearsay in Paragraphs 21, 22, and 25 about conversations between Rhodes,

16 | Johnson and Oleski on July 14 and July 15, 2007 and alleges without support or foundation that

17 | Rhodes decided to join Technology Associates International Corporation (TAIC) on July 14, 2007.

18 | This assertion is untrue and unsupported by any facts included in Plaintiff's declarations. As stated

19 | by Rhodes in his declaration, he did not decide to join TAIC until late Sunday, July 5, 2007, after

20 | hearing Johnson's version of his termination and considering what was personally best for him and

21 | his family. (Rhodes Declaration, ¶ 14.)

22 |      Plaintiff further alleges in Paragraph 25 that Rhodes downloaded information from Interloc's

23 | computer system over the weekend, but offers no admissible evidence to substantiate this allegation.

24 | This allegation is specifically denied by Rhodes in his declaration. (Rhodes Declaration, ¶ 9.)

25 |      In Paragraph 27, Plaintiff speculates that "highly confidential information could have been

26 | downloaded," but fails to identify whether the information was downloaded and who downloaded it.

27 | Rhodes specifically denies downloading any information identified in this paragraph. (Rhodes

28 | Declaration, ¶ 9.)

**Memorandum of Points and Authorities in Support of Opposition to Motion for Preliminary Injunction (2:07-CV-01534-LEW-GGH)**

M:\LTJ\Rhodes\pld\Memo of P's & A's in Support of Opposition.doc   2

After his employment ended, Rhodes contacted some Interloc employees to find out about their interest in working for TAIC.  Contrary to the inferences in Paragraph 28, nothing that Rhodes said or did in talking to these Interloc employees was a misuse of trade secrets or unfair competition. Plaintiff offers no substantiation that Rhodes provided employee Steve Misner's resume to a TAIC customer, and Rhodes denies this allegation in Paragraph 29.  That Rhodes may have told an employee that another Interloc employee said that he would join TAIC (Paragraph 28), and that Rhodes told an Interloc employee who expressed an interest in working for TAIC that he would get an offer letter for him (Paragraph 30) is not evidence of any wrongdoing.  (Rhodes Declaration, ¶ 15.)

## III.   ARGUMENT

Through this Complaint, Plaintiff is trying to punish Chris Rhodes by making misleading and false allegations about misappropriating computer files, by seeking a total prohibition on communicating with his own clients and those who voluntarily seek to do business with him personally, and by demanding a complete ban on any communication with Interloc employees despite their desires to talk with him. (Order Granting Temporary Restraining Order, pages 3: 9-28, 4: 1-7.  However, California has a strong policy favoring open competition and strongly frowns upon efforts to restrain competition between employers and their former employers.  *Kelton v. Stravinski* (2006) 138 Cal.App.4th 941.

Business & Professions Code Section 16600 prohibits any restraint, by contract or otherwise, on a former employee's right to gainful employment and to compete with his former employer unless the restriction is necessary to protect the employer's trade secrets or to prevent unfair competition.  *Muggill v. Reuben H. Donnelley Corp.* (1965) 62 Cal.2d 239, 242.  Against this backdrop, even reasonable time, place and manner restrictions, allowed in other states, are generally prohibited in California.  *KGB, Inc. v. Giannoulos* (1980) 104 Cal.App.3d 844, 849.  The Ninth Circuit recognized that under California law, it is appropriate to construe an employee's "profession, trade, or business" narrowly in order to protect the employee's pursuit of his specific career even if that choice involves competition with a former employer.  *Campbell v. Trustees of Leland Stanford Jr. University*, 817 F.2d 499, 502-502 (1987).

**Memorandum of Points and Authorities in Support of Opposition to Motion for Preliminary Injunction (2:07-CV-01534-LEW-GGH)**

M:\LTJ\Rhodes\pld\Memo of P's & A's in Support of Opposition.doc    3

A plaintiff seeking relief for misappropriation of trades must identify the trade secrets and carry the burden that they exist. *Imax Corp. v. Cinema Technologies, Inc.*, 152 F.3d 1161 (9th Cir. 1998). In this instance, Plaintiff alleges that Rhodes downloaded data from its computer system, but offers no proof that any Rhodes downloaded any trade secret information. Rhodes clearly explained in his declaration that the information he downloaded to his laptop was done for the purpose of servicing clients the following week. (Rhodes Declaration, ¶¶ 8, 9.) Further, Plaintiff provided no evidence that any of the miscellaneous material described in Paragraph 27 of the Complaint was downloaded at all.

Plaintiff argues that the identity of its customers is a trade secret, but merely labeling information as a trade secret is not enough to cause it to be a trade secret. *Thompson v. Impaxx, Inc.* (2003) 113 Cal.App.4[th] 1425, 1430. Under Civil Code Section 3426.1(d), "trade secret" means information that (1) derives independent economic value from not being generally known to the public or other persons who can obtain economic value from its disclosure or use, and that (2) is subject to efforts that are reasonable under the circumstances to maintain its secrecy. In this instance, Rhodes business contacts were those that he developed before he joined Interloc and were well-known to him and others in the industry. (Rhodes Declaration, ¶ 17.) Additionally, Rhodes did not access an Interloc customer list identified as confidential and with limited distribution. He merely had access to his own electronic "rolodex" in Microsoft Outlook where he kept both personal and business associate contacts. What constitutes a trade secret is a question of fact. As Interloc made no efforts to separate a confidential customer list from other personal and business contacts, and, through this litigation, is attempting after-the-fact to label names and telephone numbers as confidential, it cannot be concluded that information created and maintained by Rhodes and not his employer is a trade secret. *Id.* at 1430.

Plaintiff also offers no admissible evidence that Chris Rhodes misappropriated trade secrets. As pointed out in Rhodes declaration, he did not use or disclose any software, databases or other information stored on Interloc's computer system except in furtherance of its employment at Interloc. He did not provide such information to TAIC and did not use this information after his employment ended at Interloc. He returned his laptop to Interloc. (Rhodes Declaration, ¶ 9, 16.)

**Memorandum of Points and Authorities in Support of Opposition to
Motion for Preliminary Injunction (2:07-CV-01534-LEW-GGH)**
M:\LTJ\Rhodes\pld\Memo of P's & A's in Support of Opposition.doc    4

1   Further, an employee is entitled to announce his new affiliation as part of his right to engage

2   in gainful employment even to clients of his former employer.  Thus, in *Moss, Adams &Co. v.*

3   *Shilling* (1986) 179 Cal.App.3d 124, it was held that former employees of an accounting firm had

4   the right to send announcements of their change of employment when they used the former

5   employer's rolodex to obtain addresses of clients for whom they had provided professional services.

6   In accord, *Reeves v. Hanlon* (2004) 33 Cal.4[th] 1140, 1156.  Rhodes contacted some clients, those, he

7   had developed before he began working for Interloc, to notify them of his change of employment.

8   He did not solicit them to leave Interloc and place their business with TAIC and Plaintiff provided

9   no evidence of such solicitation.  As noted in his declaration, upon his departure, Chris Rhodes

10  provided Plaintiff with a list of current work and names and phone numbers of contacts.  This

11  information was unreported in Plaintiff's Complaint and declarations.  (Rhodes Declaration, ¶ 14.)

12  Plaintiff complains that Rhodes engaged in unfair competition by contacting some Interloc

13  employees after his employment ended, but fails to allege or offer proof that Rhodes used any

14  unlawful means in making contact with these employees.  As noted in *Metro Traffic Control, Inc. v.*

15  *Shadow Traffic Network* (1994) 22 Cal. App.4[th] 853, a former employee may solicit his former

16  employer's employees so long as he does not use unlawful means or engage in unfair competition

17  while doing so.  Rhodes did not use trade secret information when talking to these employees and

18  discussing whether they wanted to work for TAIC.  Some Interloc employees freely chose to follow

19  Rhodes to TAIC.  Some did not.  These decisions were made by the employees without undue

20  influence.  In this sense, *Loral Corp. v. Moyes* (1985) 174 Cal.App.3d 268 is distinguishable

21  because the former employee in *Loral Corp.* signed a termination agreement providing that he

22  would not raid employees from his former employer.  Unlike Chris Rhodes, the former employee

23  aggressively pursued the employees of his former employer in violation of the termination

24  agreement.  The court recognized that employees had the right to change jobs and competitors had

25  the right to hire them, but concluded that in that instance the former employee engaged in unlawful

26  means when aggressively soliciting his former co-workers.

27  **IV.    CONCLUSION**

28  While Plaintiff added several other causes of action in its Complaint, its claim essentially is

**Memorandum of Points and Authorities in Support of Opposition to**
**Motion for Preliminary Injunction (2:07-CV-01534-LEW-GGH)**
M:\LTJ\Rhodes\pld\Memo of P's & A's in Support of Opposition.doc   5

1  that Chris Rhodes misused trade secret information to compete unfairly with Plaintiff.  There is no

2  evidence that Rhodes did anything improper before Plaintiff summarily terminated his supervisor

3  Charles Johnson.  There is no evidence that any information on Interloc's computer system was

4  downloaded for any reason other than to serve Interloc's employees, and no evidence that any such

5  information was used for an improper purpose.  The sum total of the evidence is that, after Rhodes

6  announced his resignation, he notified clients that he brought with him to Interloc that he was

7  switching employers and talked to Interloc employees without pressure, intimidation or the use of

8  confidential information about his departure and whether they wanted to join him at TAIC.  These

9  actions were permitted within the broad California public policy protecting an employee's right to

10  maintain contact with employees and clients of his former employer so long as trade secrets are not

11  used in the process.

12  Plaintiff is seeking through this litigation what it could not have done by contract – obtain a

13  covenant not to compete.  The Temporary Restraining Order clearly shows Plaintiff's ambition was

14  to prevent all forms of communication between Rhodes and his personal clients and former co-

15  workers.  This restriction is clearly unjustified and overbroad and Defendant respectively requests

16  that the TRO be dissolved and the Request for a Preliminary Injunction denied.

18  DATED:  August 13, 2007                COOK BROWN, LLP
                                          DENNIS B. COOK

21  By: _____
                                          Attorneys for Defendant
                                          CHRIS RHODES

**Memorandum of Points and Authorities in Support of Opposition to
Motion for Preliminary Injunction (2:07-CV-01534-LEW-GGH)**

M:\LTJ\Rhodes\pld\Memo of P's & A's in Support of Opposition.doc     6